**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-01904-CMA-KLM

WINDSOR COURT, LLC,

      Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

      This matter is before the Court on the Motion for Partial Summary Judgment filed by Defendant American Family Mutual Insurance Company (Doc. # 25), against its insured, Plaintiff Windsor Court, LLC, which owns the Windsor Court Apartments that are central to the parties' dispute.  Jurisdiction is proper under 28 U.S.C. § 1332 (diversity jurisdiction).  For the reasons discussed below, Defendant's motion is GRANTED.

## I. BACKGROUND[1]

      Defendant issued an insurance policy to Plaintiff that provided coverage for certain losses to the Windsor Court Apartments.  On or about April 26, 2011, Plaintiff sent a claim to Defendant for damage to the roofing of the Windsor Court Apartments allegedly caused by a wind event on May 24, 2010.  After receiving the claim,

---

[1] The following facts are undisputed.

Defendant assigned it to senior claims adjuster Patrick Wolfe.  Within 24 hours of

receiving the claim, Wolfe contacted the insured and inspected the property.  According

to Wolfe's claim notes, when he arrived at the Windsor Court Apartments, he met with

a maintenance representative and the property manager, who indicated that the roof

should be inspected, as roof shingles had been found on the ground.  Wolfe then

inspected the six apartment buildings subject to Plaintiff's claim.

Defendant asserts that, based on Wolfe's sworn testimony, he spent more than

four hours inspecting the roofs.  (Doc. # 25 at 3 (citing Doc. # 25-2 at 5-6).)  Plaintiff

"denies that . . . Wolfe conducted a thorough inspection of the wind damaged roofs and

denies that Mr. Wolfe spent the amount of time he claimed to have spent looking at the

roofs."  (Doc. # 28 at 2.)  However, Plaintiff cites no evidence in support of its denial.

(*See id.*)  Thus, the Court deems admitted Wolfe's attestation regarding having

inspected the roofs for more than four hours.  *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring

a party asserting that a fact is in dispute to "cit[e] to particular parts of materials in the

record"); *Moreland Props., LLC v. City of Thornton*, 559 F. Supp. 2d 1133, 1137 n.1

(D. Colo. 2008) (deeming admitted facts not rebutted by "competent evidence").  Within

24 hours of completing his inspection, Wolfe prepared a damage estimate of the six

buildings, which accounted for the storm damage he had observed.  Wolfe's total

estimate of $3,573.06 was below Plaintiff's $10,000 deductible.

After inspecting the Windsor Court Apartments, Wolfe learned that Plaintiff was

represented by Peter Ridulfo, a public adjuster.  On Plaintiff's behalf, Ridulfo invited

Wolfe to return to the property and perform a reinspection, because Ridulfo believed

that the six roofs needed to be replaced in their entirety.  Wolfe declined the invitation,

explaining that a reinspection would be fruitless because he had already witnessed and

photographed the Windsor Court Apartments.  As Defendant puts it, Wolfe's position

was that "nothing on the roofs had changed from the time of [his] first inspection to the

time when the public adjuster requested the reinspection."  (Doc. # 25 at 4.)

Although Wolfe thought a reinspection would be unproductive, he suggested that

Ridulfo pursue appraisal, as set forth in the insurance policy.  The policy provides, in

pertinent part:

**E.  Property Loss Conditions**

[. . .]

**2.  Appraisal**

If we and you disagree on the amount of loss, either may
make written demand for an appraisal of the loss.  In this
event, each party will select a competent and impartial
appraiser.  The two appraisers will select an umpire.  If they
cannot agree, either may request that selection be made by
a judge of a court having jurisdiction.  The appraisers will
state separately the amount of loss.  If they fail to agree,
they will submit their differences to the umpire.  A decision
agreed to by any two will be binding.  Each party will:

**a.**  Pay its chosen appraiser; and

**b.**  Bear the other expenses of the appraisal and umpire
equally.

If there is an appraisal, we will still retain our right to deny
the claim.

(Doc. # 25-1 at 35.)  Plaintiff, through Ridulfo, did not pursue appraisal, notwithstanding

Wolfe's suggestion.  Instead, Plaintiff decided to file suit.  At that point in time, the only

document Plaintiff had provided to Defendant indicating that the six apartment buildings

needed new roofs was an estimate – in the amount of $271,865.37 – prepared by Edge

Construction.  That estimate did not identify wind, or any other peril, as the basis for the

buildings needing new roofs.

On June 30, 2011, Plaintiff initiated this action, which Defendant then removed

here from state court on July 21, 2011.  (*See* Doc. # 2.)  Plaintiff asserted a breach of

contract claim, a common law bad faith claim, and a bad faith claim under Colo. Rev.

Stat. §§ 10-3-1115 & 1116.  (Doc. # 2 at 4-5.)  On May 1, 2012, Defendant moved for

summary judgment on the two bad faith claims.  (Doc. # 25.)  Plaintiff responded to the

motion on June 8, 2012 (Doc. # 28), to which Defendant replied on June 25, 2012 (Doc.

# 29).

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A factual dispute is "genuine" if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Allen v. Muskogee*, 119 F.3d 837,

841 (10th Cir. 1997).  A fact is "material" if, under the pertinent substantive law, it is

essential to the proper disposition of the claim.  *See, e.g.*, *Wright v. Abbott Labs, Inc.*,

259 F.3d 1226, 1231-32 (10th Cir. 2001).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claims.  *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).  However, when the movant does not bear the ultimate burden of persuasion at trial, "it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'"  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998)). In either scenario, if the movant meets its burden, the non-movant may not rest on its pleadings; instead, it must "designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-26 (1986) (internal quotation marks omitted).

When reviewing a summary judgment motion, the Court views the record, and draws all reasonable inferences therefrom, "in the light most favorable to the party opposing summary judgment."  *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1146 (10th Cir. 2007).

## III.  DISCUSSION

The Court will address Plaintiff's common law and statutory bad faith claims in turn, below.

## A.    COMMON LAW BAD FAITH CLAIM

To prove the tort of bad faith breach of insurance contract in the first-party context, as here, a plaintiff must show that its insurer "acted unreasonably and with

knowledge of or reckless disregard for the fact that no reasonable basis existed for

denying the claim." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985);

*Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003).  The

determination of whether an insurer has in bad faith breached its duties to its insured

"is one of reasonableness under the circumstances." *Pham*, 70 P.3d at 572.  The

insured bears the burden of establishing "the insurer's knowledge or reckless disregard

of the fact that a valid claim has been submitted." *Id.*  This standard of care "reflects

a reasonable balance between the right of an insurance carrier to reject a non-

compensable claim submitted by its insured and the obligation of such carrier to

investigate and ultimately approve a valid claim of its insured." *Savio*, 706 P.2d at 1275.


In reviewing a bad faith claim, "the reasonableness of an insurer's conduct is

measured objectively based on industry standards." *Zolman v. Pinnacol Assurance*,

261 P.3d 490, 496 (Colo. App. 2011).  Under Colorado law, an insurer acts reasonably

when challenging claims that are "fairly debatable." *See Savio*, 706 P.2d at 1275

(quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wisc. 1978)); *Zolman*, 261

P.3d at 496-97 (collecting cases); *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d

550, 557 (Colo. App. 1998).  Ordinarily, what constitutes reasonableness under the

circumstances is a question of fact for the jury. *Bankr. Estate of Morris v. COPIC Ins.

Co.*, 192 P.3d 519, 524 (Colo. App. 2008).  In appropriate circumstances, however,

"as when there are no genuine issues of material fact, reasonableness may be decided

as a matter of law." *Zolman*, 261 P.3d at 497 (citing *Bankr. Estate of Morris*, 192 P.3d at 524).

As stated in Section I, *supra*, the facts pertaining to Defendant's motion are undisputed.  Reviewing them demonstrates why, as a matter of law, Defendant's conduct was not unreasonable.  To begin with, Defendant did not delay in conducting its investigation.  Even Plaintiff's Fed. R. Civ. P. 30(b)(6) representative characterized Wolfe's inspection as "prompt."  (Doc. # 25-3 at 2.)  Additionally, after having inspected the Windsor Court Apartment roofs for more than four hours, Defendant produced a detailed roof repair estimate.  (Doc. # 25-4.)  Although Plaintiff disagrees with Defendant's estimate, mere disagreement as to the amount of payment that may be owing under the policy is insufficient here for Plaintiff to sustain its bad faith claim. The pre-litigation estimate produced by Edge Construction cited a figure for total roof repair but failed to identify wind, or any other peril, as the basis for the estimate. Therefore, the estimate did not indicate that Defendant lacked a reasonable basis for denying Plaintiff's claim.[2]  As such, the estimate certainly did not go even further and demonstrate that Defendant acted with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying Plaintiff's claim.  In fact, on this necessary element of liability, Defendant has shown a total lack of evidence supporting Plaintiff's

---

[2]  In fact, although immaterial to Defendant's pre-litigation position on the cost of repair, Defendant's initial position was subsequently supported by the estimate prepared by Defendant's roofing expert, John Gimple, whose cost of repair estimate was within $100 of Wolfe's estimate.  (*See* Doc. # 29-4 at 4.)

claim, and Plaintiff has failed to designate any facts establishing a genuine issue for trial.

Instead, in response to Defendant's motion, Plaintiff argues that its claim "is not a mere value dispute" and specifically takes issue with Defendant's assertion that "Plaintiff's bad faith claim is comprised of a disagreement with [Defendant] regarding the amount and scope of wind damage sustained at the Windsor Court Apartments." (Doc. # 28 at 5.)  Nonetheless, Plaintiff later argues that Defendant's conduct was unreasonable because Wolfe's and Edge Construction's estimates were "diametrically opposed." (Doc. # 28 at 7.)  In addition to representing precisely the sort of "value dispute" Plaintiff denies making, Plaintiff's argument fails because it does not indicate how the underlying cost estimates were anything other than "fairly debatable."  *See, e.g.*, *Savio*, 706 P.2d at 1275.

Plaintiff further asserts that Defendant's conduct was unreasonable because Wolfe declined Ridulfo's invitation to reinspect the Windsor Court Apartments.  (*See* Doc. # 28 at 6-7.)  However, Plaintiff cites no Colorado authority, nor is the Court aware of any, holding that claims adjusters are obligated to return to an insured's property to reinspect it at the insured's request.[3]  To the contrary, Colorado law recognizes that an

---

[3]   The aversions of Plaintiff's expert, Dave Waskel, who opined that Defendant acted unreasonably (*see* Doc. # 28 at 6 (citing Doc. # 28-2)), neither constitute such authority nor raise a genuine dispute of material fact.  Under Colorado law, "[i]f the reasonable investigation and denial of an insured's claim is within the common knowledge and experience of ordinary people, then expert testimony is not required."  *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004).  Whether the standard of care is within common knowledge and experience is "committed to the sound discretion of the trial court."  *Id.*  In *Allen*, the Colorado Supreme Court addressed whether expert testimony was needed to determine the reasonableness of an investigation into an automobile insurance claim.  *Id.* at 345.  The court concluded that expert

insurer "must be accorded wide latitude in its ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance." *Savio*, 706 P.2d at 1274.  Whether Plaintiff's value estimate contemplated funds not available under the policy is, essentially, the subject of Plaintiff's breach of contract claim, which is ready for the jury's determination at trial.  The point here, though, is that Plaintiff has failed to show how Wolfe's decision not to reinspect the property fell outside the "wide latitude" accorded to adjusters in investigating claims.  Plaintiff's failure is particularly acute because Wolfe suggested to Ridulfo that Plaintiff could pursue appraisal, as set forth in the insurance policy.  Plaintiff does not deny "that the appraisal process is a contractual provision in the insurance policy that provides a fair, cost-effective opportunity to resolve a disputed claim."  (*Compare* Doc. # 25 at 5, *with* Doc. # 28 at 2-3.)  As such, based on these facts, Defendant did not act unreasonably.[4]

---

testimony was not required because: investigation of such a claim does not present "a technical question"; determining what constitutes a reasonable explanation for denying a claim does not "require special knowledge or training"; and the insured is not "required to have a particular ability to understand why coverage is denied." *Id.*  This Court has previously applied such reasoning to a bad faith claim stemming from the denial of benefits allegedly owed under a life insurance policy and concluded that expert testimony is unnecessary in that situation.  *See Racz v. SBLI USA Mut. Life Ins. Co., Inc.*, No. 11-cv-02398, 2012 WL 5989484, at *5 (D. Colo. Nov. 29, 2012) (unpublished).  Likewise, in the instant case, the standard of care owed by Defendant is within common knowledge and experience.  The reasonableness of an insurer's investigation of a wind-damage claim is not a technical question requiring professional training beyond the knowledge of the average person.  Nor is special knowledge or training required to determine what would constitute a reasonable explanation for denying a claim.  Also, an insured, like Plaintiff, is not required to have a particular ability to understand the reasons why coverage was denied.  As such, Waskel's opinions are merely conclusions – albeit conclusions contrary to those reached by the Court – based on the same undisputed facts considered here. Thus, Waskel's conclusions do not raise disputed facts requiring resolution at trial.

[4]   Plaintiff further argues that "Defendant failed to investigate any reports of roof leaks and it did not investigate if seal damage to roof shingles were covered by the policy."  (Doc. # 28 at 7.) However, these arguments do not establish genuine disputes of material fact because Plaintiff

**B.      STATUTORY BAD FAITH CLAIM**

Under Colo. Rev. Stat. § 10-3-1115, "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."  In question-begging fashion, the statute explains that "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."  Colo. Rev. Stat. § 10-3-1115(2).  Despite the circular nature of the inquiry, the Court concludes that no question exists as to whether Defendant unreasonably delayed or denied payment.[5]  Defendant came to a decision on Plaintiff's claim within 48 hours of Plaintiff reporting it.  Such "delay," if it can even be called that, is clearly not

---

fails to cite any record evidence supporting them.  *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party asserting that a fact is in dispute to "cit[e] to particular parts of materials in the record").  Nor are these arguments saved by Plaintiff's citation to cases indicating that the "duty of good faith continues throughout the course of the insurer-insured relationship" (Doc. # 28 at 5) because, without correlating factual support, such cases present only interesting but inapplicable statements of law.

[5] The Court acknowledges that the reasonableness of its conduct is Defendant's secondary argument.  (*See* Doc. # 25 at 11-12.)  Defendant's primary argument is that, because "the extent of damages caused by the May 24, 2010 wind event" has yet to be determined, no "benefits owed" have been determined and, thus, liability cannot exist under the statute.  The Court "rejects this illogical argument out of hand," as it has done previously.  *Baumann v. Am. Family Mut. Ins. Co*, No. 11-cv-00789, 2012 WL 122850, at *4 (D. Colo. Jan. 17, 2012) (unpublished) (citing other cases rejecting this same argument).  In *Baumann*, the Court fairly characterized this argument as asserting that "Plaintiff's claims fail because she has not yet proven at trial what she will attempt to prove at trial."  *Id.*  In the instant case, Defendant seems to suggest that to prevail on its statutory bad faith claim, Plaintiff would need to prosecute consecutive actions: the first to establish the amount of benefits owed and the second to determine whether payment of such an amount was unreasonably delayed or denied.  Of course such a waste of time and resources could easily be saved by, for example, simply having the jury determine sequentially whether benefits were owed and, if so, whether payment of the benefits owed was unreasonably delayed or denied.  In any event, as explained in the accompanying text, Defendant is entitled to summary judgment on its statutory bad faith claim because it did not act unreasonably.

unreasonable.  Further, for the reasons discussed in Subsection A, *supra*, Defendant did not act unreasonably in denying Plaintiff's claim.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Partial Summary Judgment (Doc. # 25) is GRANTED and the Second and Third Claims for Relief are DISMISSED.  Accordingly, it is

FURTHER ORDERED that Defendant's Motion to Strike Opinions of Plaintiff's Rebuttal Expert Dave Waskel (Doc. # 42) is DENIED AS MOOT, as that motion pertains to the bad faith claims subject to the instant Order.

DATED:  March __05__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge